Booth, J.,
delivered the opinion of the court:
The Southern Pacific Co. operates as lessee a railroad line from San Francisco, Cal., via Roseville Junction, Cal., to Portland, Oreg., the complete distance between the termini being 771.49 miles. From San Francisco, Cal., to Roseville Junction it is 108.08 miles, leaving 663.46 miles between Rose-ville Junction and Portland, Oreg. The road from Roseville Junction to Portland is what is known as a free-haul road, having been originally constructed under the act of July 25, 1866 (14 Stat. L., 239), whereby in consideration of Govern *233 ment aid Government property and troops were to be transported free of charge. The line from Roseville to San Francisco is part of the main line extending from San Francisco to Ogden, Utah, constructed under the act of July 1, 1862 (12 Stat. L., 489), by the Central Pacific Co. under Government aid, specifically agreeing that the Government should have the use of said road “ at fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same kind of service.”
From August, 1897, to March, 1902, the defendants frequently caused the transportation of both merchandise and troops over said line, paying therefor the published tariff for local transportation and the through tariff rates for through transportation. The adjustment of the proper amount due for through transportation provokes this controversy, on all. through shipments consigned to Portland from San Francisco, or vice versa. The proper accounting officers of the Government have paid the claimant company for the haul from Roseville to San Francisco upon a proportionate mileage basis; i. e., the through rate from Portland to San Francisco is 51 cents per hundred pounds, which amount divided by 108/772, relative differences in mileage, gives, in round numbers, 7.14 cents per hundred pounds. The claimant company contends that it is entitled to the published local rate of 26 cents per hundred pounds from Roseville to San Francisco, which it asserts is just and reasonable and paid by all other shippers. There is but the one issue in the case and that is the proper rate to be applied on through shipments from Roseville Junction to San Francisco. Claimant company concedes that the through rate of 51 cents per hundred pounds would be applicable in this case if the shipment concerned private parties alone; the alleged distinction as against the defendants is predicated upon the difference in the statutory provisions affecting the Government’s rights as to free transportation on one line of road and pay transportation on the other. If the case involved diverse ownership of connecting lines the record fully establishes the fact that a through rate would be established and published by mutual’ negotiations dependent for its proper division upon the rela *234 tiye cost of the transportation over each line, taking into consideration the general contour of the territory traversed and other details of expense. If physical conditions are similar and the cost of transportation approximately equal over each line the rate is divided upon what is commonly called a mileage prorate basis, the exact method employed by the Government in this case. Of course the identity of ownership in this case precluded the above arrangements, and it is readily discernible that the case is exceedingly important because applicable to similar cases involving large amounts and almost daily accountings.
In the case of the Atchison, Topeka & Santa Fe R. R. Co. v. United States (15 C. Cls. R., 126) the court held that “ through service is to be computed at through rates, local at local rates.” The act of July 25, 1866 (supra), under which the line from Eoseville Junction to San Francisco was constructed, by its express terms put the defendants as respects rate for transportation of property upon exactly the same basis as a private shipper. Their rights were no more and no less; while the transportation service from Portland to Eoseville was commonly designated “ a free haul ” it was not so in fact; it was not gratuitous. As well said in defendants’ brief, “ it had been paid in advance,” for the large grant of public lands was at least considered a full and complete consideration for the privilege. To say that because the defendants were compelled to pay freight on the short haul from Eoseville to San Francisco converted the shipment from through transportation to local is to overlook the fact that the defendants were not exempt from payment of freight for a through shipment. It had been previously paid over one line of railroad and they therefore became under the law entitled to all the rights of a private shipper transporting property over the entire route. The only question possibly involved is the proper division of the through rate. It is difficuit to perceive how the local rate from Eoseville Junction to San Francisco is at all applicable, for it must be conceded that if a private shipment only was involved no more than 51 cents per hundred pounds would have been exacted.
The method adopted by the accounting officers in the settlement of this case has been uniform and long continued. The *235 railroads with very few exceptions have acquiesced in its justness and accepted payments in accordance therewith.
The Comptroller of the Treasury, in a very exhaustive opinion covering the entire subject, found in 8 Comp. Dec., p. 598, held adversely to claimant’s contention. The opinion cites and analyzes the various decisions upon the subject and so completely covers the entire controversy that we cite it with our entire approval.
The petition is dismissed. It is so ordered.